# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| **DARRYL EDWARDS,** : | | |
| 10567 Gloria Ave. : | Case No. | |
| Cincinnati, Ohio 45231 : | | |
| : | **Judge** | |
| **Plaintiff,** : | | |
| : | | |
| v. : | | |
| : | | |
| **CITY OF CINCINNATI,** : | **JURY DEMAND ENDORSED HEREON** | |
| **Department of Buildings & Inspections** : | | |
| 805 Central Ave, Suite 500 : | | |
| Cincinnati, Ohio 45202 : | | |
| : | | |
| **Defendant.** : | | |

## COMPLAINT

Now comes Plaintiff Darryl Edwards (hereafter "Plaintiff" or "Edwards"), by and through undersigned counsel, and for his Complaint against Defendant City of Cincinnati (hereafter "Defendant" or the "City"), states and avers as follows:

### THE PARTIES

1. Plaintiff Darryl Edwards is a resident of the State of Ohio, County of Hamilton.

2. Defendant City of Cincinnati is a Municipal Corporation in the State of Ohio, County of Hamilton.

### JURISDICTION AND VENUE

3. Plaintiff incorporates his allegations set forth in paragraph 1 through 2 above as if fully rewritten herein.

4. Jurisdiction of this Court is invoked pursuant to 42 USCS § 2000e-2(a) and 28 USC Section 1331. Supplemental Jurisdiction is invoked pursuant to 28 USC §1367. Plaintiff has satisfied all pre-requisites for filing suit, including but not limited to obtaining a Notice of Right

to Sue form the Equal Employment Opportunity Commission dated August 2, 2022. A copy of the "Notice" is attached hereto as "Exhibit A."

5. The unlawful discrimination and employment practices alleged below were committed within the State of Ohio, in the Southern District, Western Division of this Federal Court.

6. At all relevant times hereto, Plaintiff worked for Defendant in Hamilton County, Ohio, which is the county in which the Defendant conducted the activity that gave rise to Plaintiff's claim for relief, and the county in which all or part of Plaintiff's claim arose.

7. At all times alleged herein, Plaintiff was an "Employee" of Defendant as the same has been defined by Title VII of the Civil Rights Act of 1964 as amended, 42 USC § 2000e-5(f), and Title 4112 of the Ohio Revised Code.

8. At all times pertinent hereto, Defendant was an "Employer" within the meaning of Title VII of the Civil Rights Act of 1964 as amended, 42 USC Section 2000e(d) as well as Title 4112 of the Ohio Revised Code.

## FACTUAL ALLEGATIONS

9. Plaintiff incorporates his allegations set forth in paragraphs 1 through 8 above as if fully rewritten herein.

10. Plaintiff is an African American male and is a State Certified Building Inspector in the State of Ohio.

11. Defendant hired Plaintiff in 2004 as a State Certified Building Inspector (hereafter "Inspector") in the Department of Buildings & Inspections.

12. As an Inspector, the City only required that Plaintiff maintain a valid driver's license, pass all State examinations to maintain his certification as a licensed building inspector,

and be physically able to walk, climb a ladder, and perform the physical aspects of the Inspector job.

13. At all times relevant hereto, Plaintiff met the Inspector requirements in which he held his Inspector job.

14. Plaintiff worked diligently as an Inspector for Defendant for 17 years. Plaintiff received above average performance reviews, was recognized for his excellent performance with achievement awards, and was asked to train newly hired Inspectors. As a result of Plaintiff's excellent performance, the City awarded Plaintiff high-profile projects.

15. Plaintiff was required to drive approximately 50-60 miles per day as an Inspector. Defendant did not provide Plaintiff with a City vehicle and required Plaintiff to drive his personal vehicle.

16. Over his 17-year career with the City, Plaintiff's personal vehicle was used on behalf of Defendant and accumulated hundreds thousands of miles in addition to wear and tear.

17. Defendant implemented new health and safety measures pursuant to the COVID-19 pandemic in 2020 (the "Safety Guidelines"). The Safety Guidelines were meant to ensure the safety of its employees that were required to report to the office because they could not work from home.

18. Inspectors were deemed essential employees that could not work from home and were required to report to Defendant's office each day.

19. The Safety Guidelines required the City to sanitize common work areas after use.

20. After the Safety Guidelines were implemented, Plaintiff noticed the City was not properly sanitizing common areas, even after several essential employees contracted COVID-19.

Plaintiff reported to Human Resources that the City, including supervisor Art Dahlberg, was not abiding by Defendant's Safety Guidelines.

21. After Human Resources received Plaintiff's report, Defendant threatened Plaintiff with disciplinary action, including termination.

22. In 2020, Plaintiff's inspection territory (the "Territory") was a five square block area that included one quarter of downtown Cincinnati's central business district, and Hyde Park, Oakley, and East Walnut Hills residential areas. Plaintiff's Territory was within walking distance to Defendant's office building downtown. Plaintiff completed his inspections within his Territory.

23. In late 2020, Plaintiff's personal vehicle ceased to be safely operational due to extensive mileage accumulated from his job as an Inspector. Plaintiff was unable to safely utilize his personal vehicle to travel to his inspections.

24. Immediately after his personal vehicle was no longer safe to drive, Plaintiff requested to use a City vehicle for his inspection. Plaintiff submitted his request to the Director of the Department of Buildings & Inspections, Art Dahlberg ("Dahlberg"), the Supervisor of Building Construction Inspections, Eugene Lackey ("Lackey"), and his immediate Supervisor, Mike Spry ("Spry"). Dahlberg and Spry are Caucasian males and Lackey is an African American male.

25. Shortly after Plaintiff submitted his request to use a City vehicle and while Plaintiff was waiting on Defendant's response, Defendant changed Plaintiff's Territory to be outside walking distance from the downtown office in January or February 2021 (the "New Territory").

26. After Defendant assigned Plaintiff to his New Territory, Plaintiff continued to show up to the office downtown, conduct inspections within walking distance, and communicated with Defendant regarding his request to use a City vehicle. Plaintiff also continued to perform his job duties which included data entry in the Permit Plus system, communicate with developers,

contractors, and owners on job sites, appeared in Court as requested, and attend internal meetings for plan examination, property code maintenance enforcement, and real estate.

27. Each time Plaintiff requested an update about his request, attempted to discuss the City vehicles, or asked for transportation assistance, Spry became angered. Spry and Dahlberg were infuriated Plaintiff was walking to his inspections. Spry repeatedly and intentionally scheduled inspections for Plaintiff that required a vehicle to complete.

28. Defendant refused to provide transportation assistance to Plaintiff and required Plaintiff to use his personal vehicle for his Inspector job duties.

29. In response to Plaintiff's requests for transportation assistance, Spry and Dahlberg initiated several disciplinary actions against Plaintiff for neglect of duty, insubordination, and for being AWOL.

30. Also, in response to Plaintiff's requests for transportation assistance, Dahlberg threatened to remove Plaintiff from his Inspector job if he failed to obtain a personal vehicle to use for his Inspector duties on behalf of the City.

31. Dahlberg informed Plaintiff's co-inspector that Dahlberg would have Plaintiff escorted off the premises by the police if he would not obtain a personal vehicle.

32. Plaintiff did not have the financial means to purchase a personal vehicle and requested to transfer to a department in which Defendant stated Plaintiff would not need to use his personal vehicle.

33. Defendant refused to allow Plaintiff to transfer departments and insisted Plaintiff purchase a personal vehicle to complete his Inspector job duties on behalf of the City.

34. Dahlberg also continued to pursue disciplinary action against Plaintiff and blocked Plaintiff's department transfer.

35. Defendant forced Plaintiff to resign and replaced Plaintiff with a Caucasian male.

## COUNT I – TITLE VII RACE DISCRIMINATION

36. Plaintiff incorporates his allegations set forth above as if fully rewritten herein.

37. Plaintiff is a member of a protected class and was, at all times relevant hereto, qualified for his position as an Inspector.

38. Defendant forced Plaintiff leave his Inspector Job and Plaintiff suffered an adverse employment action.

39. Plaintiff was treated differently than similarly situated employees outside his protected class.

40. Defendant acted with malice and/or reckless malfeasance toward Plaintiff's protected rights and for such willful conduct, Defendant is liable for punitive damages.

41. As a direct and proximate result of Defendant's conduct set forth above, Plaintiff has suffered damages, including but not limited to emotional and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, lost wages and income, and other benefits to which he was entitled, an amount to be determined at trial.

## COUNT II – TITLE VII RETALIATION

42. Plaintiff incorporates his allegations set forth above as if fully rewritten herein.

43. Plaintiff engaged in a protected activity and made a report to Human Resources and several requests within his department.

44. Defendant was aware of Plaintiff's protected activity.

45. After Plaintiff engaged in his protected activities, Defendant reassigned Plaintiff's territory, denied his departmental transfer requests, refused to provide any transportation

assistance, and forced Plaintiff out of his Inspector job. Plaintiff suffered an adverse employment action.

46. Plaintiff's adverse employment action is causally connected to his protected activities and constitutes retaliation as prohibited by Title VII.

47. Defendant acted with malice and/or reckless malfeasance toward Plaintiff's protected rights and for such willful conduct, Defendant is liable for punitive damages.

48. Because of Defendant's retaliation, Plaintiff has suffered compensatory damages including, but not limited to emotion and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, lost wages and income, and other benefits to which he is entitled, in an amount to be determined at trial.

## COUNT III – CONSTRUCTIVE DISCHARGE

49. Plaintiff incorporates his allegations set forth above as if fully rewritten herein.

50. Defendant deliberately created intolerable working conditions for Plaintiff.

51. Defendant created such intolerable working conditions with the intent to force Plaintiff to terminate his employment with Defendant.

52. A reasonable person in Defendant's position would have quit because of the intolerable working conditions Defendant created.

53. Defendant forced Plaintiff to resign from his position.

54. Because of Defendant's constructive discharge, Plaintiff has suffered compensatory damages including, but not limited to emotion and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, lost wages and income, and other benefits to which he is entitled, in an amount to be determined at trial

**WHEREFORE,** Plaintiff Darryl Edwards prays for judgment against Defendant City of Cincinnati, for compensatory and punitive damages, including but not limited to emotional and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, lost wages and income, and other benefits to which she was entitled, in an amount to be determined at trial and an award of Plaintiff's costs and reasonable attorney fees incurred relating to this action; ALL TOGETHER WITH such other relief as may be just, necessary and proper.

    Respectfully submitted,

    KEMP, SCHAEFFER, & ROWE CO., L.P.A.

By: /s/ Erica Ann Probst
    Erica Ann Probst #0073486
    Andrea L. Salvino #0097768
    Attorneys for Plaintiff
    88 West Mound Street
    Columbus, Ohio 43215
    (614) 224-2678
    (614) 469-7170 (fax)
    Email: Erica@ksrlegal.com
           ASalvino@ksrlegal.com

## **JURY DEMAND**

Now comes Plaintiff, by and through counsel, and hereby demands that a jury hear the above case.

        Respectfully submitted,

        KEMP, SCHAEFFER, & ROWE CO., L.P.A.

        By: /s/ Erica Ann Probst
            Erica Ann Probst  #0073486
            Andrea L. Salvino #0097768
            Attorneys for Plaintiff
            88 West Mound Street
            Columbus, Ohio 43215
            (614) 224-2678
            (614) 469-7170 (fax)
            Email: Erica@ksrlegal.com
                    ASalvino@ksrlegal.com