IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Darryl Edwards, | : | |
| | : | Case No. 1:22-cv-503 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Motion to Dismiss |
| City of Cincinnati, | : | |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant City of Cincinnati's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 8.) Plaintiff Darryl Edwards alleges in his Complaint that the City is liable for racial discrimination and retaliation in violation of Title VII and for constructive discharge. (Doc. 1.) The City moves to dismiss on the grounds that Plaintiff has failed to state a claim upon which relief can be granted. Specifically, the City asserts that Edwards has not pleaded sufficient facts to support his allegations that he was constructively discharged, that he suffered any other adverse employment action, or that he engaged in protected conduct for purposes of Title VII retaliation. Edwards opposes dismissal of his suit. For the reasons that follow, the Court will Grant the Motion to Dismiss.

I.     BACKGROUND

A.     Factual Allegations

The well-pleaded factual allegations in the Complaint are taken as true for purposes of the Motion to Dismiss.[1] Edwards is an African-American male and is a state certified building inspector in the State of Ohio. (Doc. 1 at PageID 2.) The City hired Edwards as a building

---

[1] The Court did not consider factual assertions made by Edwards in the Memorandum Contra but not alleged in the Complaint. (Docs. 1, 9.)

1

inspector in the Department of Buildings & Inspections ("the Department") in 2004. (*Id.*) The City required Edwards as an inspector to maintain a valid driver's license, maintain his building inspector certification, and be able to physically perform the duties of a building inspector. (*Id.* at PageID 2–3.) Edwards satisfied those qualifications at all times. He received above-average reviews, won achievement awards, was assigned high profile projects, and was asked to train other building inspectors. (*Id.* at PageID 3.)

In 2020, the City implemented new health and safety guidelines in response to the COVID-19 pandemic. (*Id.*) Building inspectors were deemed essential employees who could not work from home and were required to report to the office each day. (*Id.*) The City's new safety guidelines required the City to sanitize common work areas after use. (*Id.*) The City failed to properly sanitize the common areas, even after several essential employees contracted COVID-19. (*Id.*) Edwards reported to Human Resources that the City, including Art Dahlberg, the director of the Department, was not following its safety guidelines. (*Id.* at PageID 3–4.) In response, the City threatened Edwards with disciplinary action, including termination. (*Id.* at PageID 4.)

Edwards makes somewhat contradictory allegations about how much he was required to drive in his position as a building inspector. First, he alleges that he was required to drive fifty to sixty miles daily as a building inspector. (*Id.* at PageID 3.) Second, he alleges that his inspection territory in 2020 included one quarter of the downtown Cincinnati business district and the Hyde Park, Oakley, and East Walnut Hills residential areas. (*Id.* at PageID 4.) However, he then contradictorily alleges that his inspection territory "was within walking distance to Defendant's office building downtown." (*Id.*)[2] The Court assumes that Edwards means that the

---

[2] A Google Maps search indicates that the City Department of Buildings and Inspections is located approximately two miles from Walnut Hills, approximately five miles from Hyde Park, and approximately six miles from Oakley.

downtown business district was within walking distance of his office building.  (*Id.*)  The City did not provide him a vehicle but instead required him to drive his personal vehicle.  (*Id.* at PageID 3.)

In late 2020, Edwards's vehicle ceased to be safe to drive due to excessive mileage.  (*Id.* at PageID 4.)  He submitted a request to Dahlberg, Eugene Lackey, the Supervisor of Building Construction Inspections, and Mike Spry, his immediate supervisor to use a City vehicle for his inspections.  (*Id.*)  Dahlberg and Spry are Caucasian, but Lackey is African American.  (*Id.*)  Shortly thereafter, in January or February 2021, the City changed Edwards's inspection territory so that it was outside of walking distance of their office building.  (*Id.*)  After being assigned to the new territory, Edwards conducted inspections to which he could walk and performed other job duties such as data entry, communicating with developers and contractors, appearing in court, and attending meetings.  (*Id.*)

Spry became angry when Edwards requested updates on his request to use a City vehicle, and he intentionally scheduled inspections for Edwards that required a vehicle to complete.  (*Id.* at PageID 5.)  The City refused Edwards's request to use a City vehicle.  (*Id.*)  Spry and Dahlberg, in response to Edwards's requests for transportation assistance, initiated disciplinary actions against Edwards for neglect of duty, insubordination, and for being AWOL.  (*Id.*)  Dahlberg threatened to remove Edwards from his position and told another inspector that he would have Edwards removed from the premises by the police if Edwards did not obtain a personal vehicle.  (*Id.*)  Edwards could not afford to purchase a personal vehicle, and he requested a transfer to a department where he did not need to use a personal vehicle.  (*Id.*)  Dahlberg blocked his transfer request.  (*Id.*)  The City "forced" Edwards to resign, and the City replaced him with a Caucasian male.  (*Id.* at PageID 6.)

3

B.     **Procedural History**

Edwards initiated this suit against the City on August 29, 2022.  He asserted three claims for relief: (1): Title VII discrimination; (2): Title VII retaliation; and (3) constructive discharge. The City then filed the pending Motion to Dismiss.  (Doc. 8.)  It is fully briefed and ripe for adjudication. (Docs. 9, 10.)

II.    **STANDARD OF LAW ON A MOTION TO DISMISS**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Rule 8(a)(2)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.  A complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (citation omitted).  However, it "does not need detailed factual allegations" or "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 555, 570.  A district court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–679; *DiGeronimo*

*Aggregates*, 763 F.3d at 509.

### III. ANALYSIS

#### A. Title VII Discrimination and Constructive Discharge

In his overlapping first and third claims, Edwards alleges that the City discriminated against him and constructively discharged him on the basis of his race. (Doc. 1 at PageID 6–7.) Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Under the *McDonnell Douglas* indirect evidence method of proof, a prima facie case of discrimination requires proof that the plaintiff: (1) is a member of a protected class; (2) was qualified for his job; (3) suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated less favorably than similarly-situated employees. *See Masaebi v. Arby's Corp.*, 852 F. App'x 903, 908 (6th Cir. 2021). However, *McDonnell Douglas* provides an evidentiary standard, not a pleading standard. *Iqbal* and *Twombly* control the analysis on a motion to dismiss Title VII claims. *Id.* at 909. "Detailed factual allegations are not necessary; a plaintiff need only allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that an employer violated Title VII." *Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL 3042844, at *3 (6th Cir. Aug. 2, 2022) (cleaned up).[3]

Here, Edwards has not pleaded any facts constituting direct evidence of discrimination.

---

[3] While the prima facie standard does not provide strict pleading requirements, it can be a useful means to examine whether a plaintiff has stated a plausible discrimination claim. For example, in the *Masaebi* case, the plaintiff argued that she had alleged the elements of her prima facie case, but the Sixth Circuit dismissed her claim because she had not pleaded facts which supported an inference that employees outside the protected class were treated more favorably than her. *Id.* at 908–909. The Sixth Circuit concluded that the plaintiff had not pleaded facts from which an inference arose that her employer considered her national origin in making employment decisions. *Id.* at 909.

5

Instead, he alleges circumstantial evidence of discrimination including that he is African American, that he served in his position for more than seventeen years and received positive employment reviews, and that he was replaced by a Caucasian male. (Doc. 1 at PageID 2–3, 6.) The dispute here is whether Edwards has pleaded that he was discriminated against—that is, whether he suffered an adverse employment action that affected the terms and conditions of his employment—on the basis of his race. *See Lee v. Cleveland Clinic Found.*, 676 F. App'x 488, 494 (6th Cir. 2017) (stating that an adverse employment action requires a materially adverse change in the terms of employment). Common examples of actions which affect the terms and conditions of employment include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (citation omitted).

Edwards argues that his allegations that he was disciplined, assigned a new inspection territory, and constructively discharged suffice to show that he suffered an adverse employment action on the basis of his race. The Court does not agree. First, issuing discipline to an employee short of a suspension without pay or termination ordinarily does not constitute an adverse employment action. *See Lee*, 676 F. App'x at 494; *Golden v. Metro. Gov't of Nashville & Davidson Cty.*, 263 F. Supp. 3d 684, 691 (M.D. Tenn. 2017). Discipline can amount to an adverse employment action if it affects the employee's opportunity for promotion or pay raises or moves an employee forward on a progressive discipline plan. *Kostic v. UPS, Inc.*, 532 F. Supp. 3d 513, 535 n. 29 (M.D. Tenn. 2021). Edwards does not allege facts suggesting that the disciplinary actions instituted against him had any material consequences. Moreover, he alleges that his supervisors initiated discipline against him in retaliation for his request for transportation assistance. That allegation does not on its own raise an inference of racially-discriminatory

6

intent in the absence of an allegation that white employees were treated differently.

Likewise, a lateral transfer or change in assignment is not an adverse action unless it involves a materially adverse change in the terms and conditions of employment. *Freeman v. Potter*, 200 F. App'x 439, 443 (6th Cir. 2006).  A transfer or change in assignment can amount to an adverse action if it includes a less distinguished title, fewer opportunities for advancement, or other unique circumstances as judged in objective terms.  *Id.*  Edwards alleges that in early 2021 he was reassigned to a new inspection territory in which he could not walk to any building inspection sites.  (Doc. 1 at PageID 4.)  That reassignment, however, does not amount to a material change of the job duties based on the facts he has alleged.  He was required to drive fifty to sixty miles per day as a building inspector prior to his assignment to a new territory.  (*Id.* at PageID 3.)  His personal vehicle became unsafe to drive due to the many miles he had driven as an inspector.  (*Id.* at PageID 4.)[4]  The transfer to a new territory in which driving a personal vehicle continued to be required is not an adverse employment action in these circumstances.  Finally, to the extent that Edwards implies that he was assigned to a new territory because he requested transportation assistance, that allegation again does not raise an inference that the City's actions were racially motivated.

Finally, Edwards has not pleaded sufficient facts as a matter of law to state a plausible claim that he was constructively discharged.  "A constructive discharge requires a determination that working conditions would have been so difficult or unpleasant that a reasonable person in

---

[4] Edwards also alleges that he was denied the opportunity to transfer to a new department where a personal vehicle would not be required.  (Doc. 1 at PageID 5.)  He does not specifically argue in his Memorandum Contra that this denied transfer request standing alone constituted an adverse action.  (Doc. 9 at PageID 38–39.)  In any event, denial of a lateral transfer is not usually an adverse action.  *Freeman*, 200 F. App'x at 443.  Moreover, Edwards has not pleaded here that similarly-situated, non-African American employees were permitted to transfer departments or that the position to which he wanted to transfer was filled by a non-African American employee.  His allegations raise an inference that the City denied the request in retaliation for him requesting transportation assistance, not on the basis of race.  As such, he has not stated a plausible claim of race discrimination based on the denied transfer request.

the employee's shoes would have felt compelled to resign." *Smith v. Henderson*, 376 F.3d 529, 533–534 (6th Cir. 2004) (internal quotations and citations omitted). An employee's subjective beliefs are not sufficient to meet the burden of establishing a constructive discharge. *Henry v. Abbott Labs.*, 651 F. App'x 494, 508 (6th Cir. 2016). The employee must prove objectively intolerable working conditions and that the employer intended for him to quit. *Fletcher v. U.S. Renal Care*, 709 F. App'x 347, 351 (6th Cir. 2017). Factors suggesting that conditions were objectively intolerable can include demotions, reductions in salary or job duties, conduct intended to harass or humiliate, and offers of early retirement or continued employment on less favorable terms. *Arnold v. Cincinnati Sportservice, Inc.*, No. 1:12-cv-460, 2013 WL 3761071, at *14 (S.D. Ohio 2013) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001)); *see also Littlejohn v. Montgomery Cty. Treasurer*, No. 3:16-cv-00350, 2017 WL 2861183, at *3 (S.D. Ohio July 5, 2017) (similar list).

Here, Edwards alleges that City officials denied him use of a City vehicle; reassigned him to a new inspection territory in which he could not walk to any inspections; subjected him to disciplinary actions for neglect of duty, insubordination, and being AWOL; threatened him with termination; told his co-worker that the City would have the police escort him from the premises if he did not obtain a personal vehicle; and denied him a transfer to a different department where he would not need a personal vehicle to perform his job duties. Context matters in examining these alleged facts, which the Court assumes to be true. The common thread to all of these allegations is that the City refused to provide Edwards with transportation assistance to fulfill his duties as a building inspector. Edwards had for his entire career prior to late 2020 driven his own vehicle to inspections. His supervisors initiated discipline against him when he did not complete inspections to which he was required to drive. The City did not fundamentally change

the terms and conditions of his employment. Rather, the City only denied Edwards's request to accommodate his financial hardship by providing him a City vehicle or giving him a new position. Of note, Edwards has not alleged that the City provided transportation assistance or the use of a City vehicle to any other building inspector. It cannot be considered objectively intolerable for an employer to refuse to provide an employee with transportation assistance or any similar accommodation that the employer is not legally required to provide.

The Court concludes as a matter of law that Edwards has failed to plead a plausible claim that City constructively discharged him or discriminated against him on the basis of his race under the *Iqbal* and *Twombly* standard. The Court will dismiss the Title VII race discrimination and constructive discharge claims.

**B.    Title VII Retaliation**

Edwards also alleges a claim for Title VII retaliation. It is "an unlawful employment practice for an employer to discriminate against any of [its] employees" because the employee "opposed . . . an unlawful employment practice" under Title VII or participated in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). The City moves to dismiss on the grounds that Edwards has not alleged that he engaged in protected conduct by opposing conduct that was unlawful under Title VII. Title VII, of course, prohibits employment discrimination on the basis of an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Edwards specifically alleges in the Complaint only one instance in which he complained to the City about improper conduct. He alleges that he reported to Human Resources that the City was failing to properly sanitize common work areas in violation of its own COVID-19 safety guidelines. (Doc. 1 at PageID 3–4.) The City's alleged failure to follow internal health

and safety guidelines is not prohibited by Title VII. Therefore, Edwards did not oppose an unlawful employment practice under Title VII when he complained to the City about violation of the COVID-19 safety guidelines.

Edward asserts in the Title VII retaliation claim in the Complaint that his "requests within his department" also constituted protected activity. (Doc. 1 at PageID 6.) This is incorrect as a matter of law. The only requests that Edwards alleges he made were (1) for transportation assistance in the form of use of City vehicle to drive to inspection sites and (2) to transfer to a position in a department in which he would not need to drive his personal vehicle. (*Id.* at PageID 4–5.) A request for transportation services or any request for a change to the terms and conditions of his employment does not constitute an act of opposing an unlawful employment practice. "A request for an accommodation [in these circumstances] does not constitute protected activity under Title VII, which clearly delineates two options: opposition to discriminatory practice or participation in an investigation." *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 358 (6th Cir. 2020). In conclusion, because Edwards does not allege that he opposed an employment practice that was unlawful under Title VII, he does not plead a plausible claim for Title VII retaliation.

IV. **CONCLUSION**

For the foregoing reasons, the City of Cincinnati's Motion to Dismiss Plaintiff's Complaint (Doc. 8) is **GRANTED**.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge